**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NATIONAL AMERICAN INSURANCE
COMPANY, et al.,

      Plaintiffs,

v.                                      No. CV 19-1020 KG/CG

IRIS RODRIQUEZ, as the Personal
Representative of the ESTATE OF
CHAD ZACK RODRIQUEZ,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION OF SETTLEMENT ON BEHALF OF MINORS

**THIS MATTER** is before the Court on the parties' *Motion for Court Approval of Minor Settlement* (the "Motion"), (Doc. 68), filed December 14, 2020. In the Motion, the parties request that the Court approve the settlement on behalf of the minors in this matter, Chevy Alan Rodriquez and Lillie Rose Rodriquez. On December 16, 2020, United States District Judge Kenneth J. Gonzales referred the Motion to the undersigned to perform legal analysis and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 70).

The Court, having considered the terms of the parties' settlement, the Guardian Ad Litem (the "GAL") reports, the record of this case, the relevant law, and the arguments presented at the fairness hearing, finds the settlement and the proposed division of the settlement proceeds is fair, reasonable, and in the best interest of Chevy Alan Rodriquez and Lillie Rose Rodriquez and **RECOMMENDS** that it be **APPROVED**.

## I.   LEGAL STANDARD

Whenever a court is called upon to approve the compromise of a minor's claim, it is proper for that court to investigate the fairness of the settlement and determine whether the settlement terms are in the best interest of the minor. Before approving such a settlement, the Court must ensure that the interests of the minor will be adequately considered and protected. *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989). "Rule 17(c) flows from the general duty of the court to protect the interests of infants and incompetents in cases before the court." *Id.* (citing *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir. 1978)); *see also Noe v. True*, 507 F.2d 9, 11-12 (6th Cir. 1974). In accordance with Rule 17(c)(2), "[t]he Court must appoint a guardian *ad litem*— or issue another appropriate order—to protect a minor. . . ." In the exercise of its discretionary oversight authority, the Court should consider the following factors (the "*Jones* factors"):

(1)   whether the proposed settlement was fairly and honestly negotiated;

(2)   whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)   whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)   the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (citation omitted).

## II.   BACKGROUND

This case arises out of a two-vehicle accident that occurred on October 25, 2017, on US highway 285 in Eddy County, New Mexico. (Doc. 1); (Doc. 74). A pick-up truck

2

operated by Chad Rodriquez was struck head-on by a pick-up truck operated by Ricky Swafford when Mr. Swafford crossed the centerline of the roadway. *Id.* The impact resulted in the death of both drivers. *Id.* The minor children were not occupants of Mr. Rodriquez's vehicle and sustained no bodily injury in connection with the accident. *Id.*

Iris Rodriquez brought a complaint personally, on behalf of the Estate of Chad Rodriquez, and as natural guardian and next friend of her minor children Chevy Alan Rodriquez and Lillie Rose Rodriquez, alleging Mr. Swafford was negligent in his operation of the truck. (Doc. 7); *see also Rodriquez et al. v. National American Insurance Company et al.*, 2:19-cv-1040 CG/KRS (Doc. 1); (Doc. 1-1). She further alleged that Mr. Swafford was employed by Gulf International Field Services, Inc. ("GIFS"), and Gulf International Corporation ("GIC"), and that he was acting within the course and scope of employment at the time of the accident. *Id.*; *see also* (Doc. 74). GIC is a parent or sister corporation of GIFS; however, the employment contract was between Mr. Swafford and GIFS. (Doc. 74). Additionally, Iris Rodriquez alleged that either or both GIFS and GIC are liable for their own negligence because of the number of hours Mr. Swafford was allegedly required to work and drive. *See Rodriquez et al. v. National American Insurance Company et al.*, 2:19-cv-1040 CG/KRS (Doc. 1-1). GIFS and GIC deny these allegations. (Doc. 14).

Finally, Iris Rodriquez also brought claims against National American Insurance Company ("NAICO"), the alleged insurer of the company vehicle Mr. Rodriquez operated, for not paying under the "underinsured motorist" provision of the applicable NAICO policy. *See Rodriquez et al. v. National American Insurance Company et al.*,

2:19-cv-1040 CG/KRS (Doc. 1-1). That case has since been consolidated with the

instant case, in which NAICO alleges that it does not owe underinsured motorist

benefits to Mr. Rodriquez's Estate. (Doc. 1); (Doc. 5).

In September 2020, the parties agreed in principle to settle the litigation between

Iris Rodriquez, personally and as personal representative of the Estate of Chad

Rodriquez and as natural guardian and next friend of her minor children, Chevy Alan

Rodriquez and Lillie Rose Rodriquez, Gulf Interstate Field Services, Inc., Gulf

International Corporation, the Estate of Ricky Swafford and their respective insurers.

(Doc. 59). Upon Court approval of the terms of the settlement, the parties agree the

claims between the Rodriquez parties and National American Insurance Company

should be dismissed with prejudice. *Id.* As part of the settlement, Iris Rodriquez and her

children will receive $4,530,007.00, inclusive of attorney fees, from the insurance

policies of GIFS and GIC. (Doc. 74). This sum is comprised of several payments:

$1,000,000.00 from Liberty Mutual (policy limit); $30,007.00 from Progressive (policy

limit); and $3,500,000.00 from Allaniz. *Id.* at 6.

Pursuant to § 41-2-3(B) of the Wrongful Death Act, one half of the net settlement

proceeds, in the amount of $1,446,896.48, will be distributed to Iris Rodriquez, and the

remaining half will be distributed to the minor children, with each child receiving

$723,448.24. N.M. Stat. Ann. § 41-2-3(B); (Doc. 74). Iris Rodriquez has chosen an

option for her son Chevy Allen Rodriguez with guaranteed benefits totaling

$1,082,691.00 and expected benefits totaling $1,697,920.20. *Id.* at 7. She has chosen

an option for her daughter Lillie Rose Rodriquez with guaranteed benefits totaling

$1,111,092.00 and expected benefits totaling $1,890,264.48. *Id.*

As part of the settlement, the parties agreed that Defendants would be solely responsible for payment of fees and costs billed by the GAL for his service on behalf of Chevy Alan Rodriquez and Lillie Rose Rodriquez in connection with the Court's approval of the settlement agreement. (Doc. 75). The parties are not aware of any liens against the settlement proceeds. (Doc. 74 at 6). New Mexico Mutual, the worker's compensation insurance carrier, has paid benefits to Iris Rodriquez and her minor children since the date of the accident, totaling approximately $100,000.00 to date. *Id.* at 6-7. There was also a separate settlement between Iris Rodriquez and New Mexico Mutual which resulted in a payment of $65,000.00 to Iris Rodriquez and her minor children. *Id.* at 7. Iris Rodriquez intends to deposit the minor children's shares of about $16,250.00 for each child in separate bank accounts for their benefit, to be withdrawn only upon approval from the worker's compensation court. *Id.* New Mexico Mutual is not seeking reimbursement. (Doc. 75).

On November 5, 2020, the Honorable Kenneth J. Gonzales entered an *Order Appointing Temporary Guardian Ad Litem*, (Doc. 63), appointing Cord Borner as GAL for Chevy Alan Rodriquez and Lillie Rose Rodriquez, and directing him to prepare a report concerning the fairness and reasonableness of the settlement agreement. On December 7, 2020, Mr. Borner submitted his GAL report on behalf of Chevy Alan Rodriquez and Lillie Rose Rodriquez. (Doc. 65). On February 3, 2021, Mr. Borner submitted an updated report, with a finalized annuity proposal for each child from Arcadia Settlements Group. (Doc. 74).

The Court held a telephonic Fairness Hearing on February 3, 2021, at which time counsel for all parties appeared, along with GAL Cord Borner and Iris Rodriquez. (Doc. 75). Counsel explained that Iris Rodriquez will invest the settlement proceeds payable to her minor children in structured settlement tax-free annuities through Arcadia Settlements Group. *Id.* Counsel agreed that the settlement was fair to the minors and should be approved. *Id.* Counsel confirmed that Mr. Borner's fee will not be paid from the settlement proceeds in this case. *Id.*

Next, Mr. Borner described his work in this case as outlined in his GAL report. He testified that the settlement is fair, reasonable, and in the best interests of the minor children. *Id.*

The Court then heard testimony from Iris Rodriquez. *Id.* She indicated she understands the parties' agreement and the settlement, and she believes the settlement is fair and in her minor children's best interest. *Id.* The Court confirmed with counsel that they did not have any objections to the terms of the settlement agreement and recommendations of the GAL. *Id.* The Court also clarified that the minor children's family name is correctly spelled "Rodriquez." At the conclusion of the fairness hearing, the Court deemed the settlement was fair and reasonable and indicated it would recommend findings and a disposition to that effect to Judge Gonzales. *Id.* Further, at that time, counsel agreed to waive any objections to such recommended findings and disposition. *Id.*

III.     **DISCUSSION**

In the exercise of its discretionary oversight authority, the Court should

first consider whether the proposed settlement was fairly and honestly

negotiated. *Jones,* 741 F.2d at 324. In general, arms-length negotiations, absent

any allegations of collusion, demonstrate that a settlement was fairly and

honestly negotiated. *See, e.g., Lowery v. City of Albuquerque*, 1:9-cv-457

JB/WDS, 2013 WL 1010384, at *36 (D.N.M. Feb. 27, 2013). In this case, Iris

Rodriquez retained an economist, Mark McKinnon, who opined that the

economic loss resulting from the death of Chad Rodriquez is $2,814,153.00.

(Doc. 74 at 5). This calculation does not include "damages for [] pain and

suffering, loss for enjoyment of life, or loss of society, companionship and

consortium." *Id.* The parties thus propose a total settlement of $4,530,007.00 to

settle all claims relating to the accident of October 25, 2017. *Id.* at 6. This

settlement is the result of an arms-length negotiation after private mediation.

(Doc. 50). The Court therefore concludes that the proposed settlement was fairly

and honestly negotiated.

Second, the Court must consider whether serious questions of law and fact exist,

placing the ultimate outcome of the litigation in doubt. *Jones,* 741 F.2d at 324. Mr.

Borner notes in his report that the circumstances surrounding liability are "not fully

apparent" and that this is a case where "a compromise settlement is appropriate and

warranted." (Doc. 74 at 3). The Court therefore concludes that serious questions of law

and fact exist, placing the ultimate outcome of the litigation in serious doubt.

Third, the Court must consider whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Jones,* 741 F.2d at 324. While Mr. Borner states that there is sufficient evidence available to demonstrate that Mr. Swafford was negligent, he also notes that the exact circumstances of liability are "not fully apparent," and recommends that the Court approve the instant settlement. (Doc. 74 at 3). Therefore, the Court concludes that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

Fourth and finally, the Court must consider whether it is the judgment of the parties that the settlement is fair and reasonable. *Jones,* 741 F.2d at 324. Counsel for all parties, Iris Rodriquez, and Mr. Borner all stated at the hearing that they believe the settlement is fair and reasonable. (Doc. 75). Mr. Borner also opined in his report that the settlement is fair and reasonable and in the best interests of Chevy Alan Rodriquez and Lillie Rose Rodriquez, and recommended that the Court approve the settlement. (Doc. 74). Therefore the undersigned, having considered the GAL reports, the record of this case, the relevant law, the presentations of counsel, and the testimony of Mr. Borner and Iris Rodriquez during the fairness hearing held on February 3, 2021, finds the settlement to be fair, reasonable, and in the best interests of Chevy Alan Rodriquez and Lillie Rose Rodriquez. *See Jones*, 741 F.2d at 324 (The Court "must approve a settlement if it is fair, reasonable and adequate").

IV.    **CONCLUSION**

The undersigned therefore **RECOMMENDS** the Court order as follows:

8

1. By way of settlement, the insurers shall pay the following sums:

    a. Progressive County Mutual Insurance Company, on behalf of its insured, the Estate of Ricky Swafford, Gulf Interstate Field Services, Inc., and Gulf International Corporation will pay the following sums:

        i. An immediate cash payment of $3,083,110.52 (of which Progressive County Mutual Insurance Company on behalf of its insured, the Estate of Ricky Swafford, shall pay $30,007.00), to be disbursed as follows:

            (1) $1,510,002.00 for attorney fees payable to Iris Rodriquez's counsel.

            (2) $118,282.98 for New Mexico Gross Receipts Tax payable to Iris Rodriquez's counsel.

            (3) $1,446,896.48 payable to Iris Rodriquez and her counsel.

            (4) $7,929.06 for costs payable to Iris Rodriquez's counsel.

        ii. Future periodic payments shall be funded on the dates and in the amounts indicated hereafter:

            (1) Payable to Chevy Rodriquez

                a. $20,000.00 semiannually, guaranteed 4 years, beginning at age 18 (on February 16, 2034). The last payment will be made on August 16, 2037.

b.  $1,250.00 per month, guaranteed 4 years,

    beginning at age 18 (on February 16, 2034). The

    last payment will be made on January 16, 2038.

c.  $200,000.00 guaranteed lump sum payable at age

    30 (on February 16, 2046).

d.  $6,250.00 quarterly, guaranteed 1 year, beginning

    at age 22 (on February 16, 2038). The last

    payment will be made on November 16, 2038.

e.  $12,500.00 quarterly, guaranteed 1 year,

    beginning at age 26 (on February 16, 2042). The

    last payment will be made on November 16, 2042.

f.  $6,250.00 quarterly, guaranteed 3 years,

    beginning at age 27 (on February 16, 2043). The

    last payment will be made on November 16, 2045.

g.  $1,708.97 per month for the life of Chevy

    Rodriquez, guaranteed 25 years, beginning at age

    22 (on February 16, 2038). The last guaranteed

    payment will be made on January 16, 2063.

(2) Payable to Lillie Rodriquez

a.  $20,000.00 semiannually, guaranteed 4 years,

    beginning at age 18 (on August 5, 2035). The last

    payment will be made on February 5, 2039.

10

b. $1,250.00 per month, guaranteed 4 years,

beginning at age 18 (on August 5, 2035). The last

payment will be made on July 5, 2039.

c. $6,250.00 quarterly, guaranteed 1 year, beginning

at age 22 (on August 5, 2039). The last payment

will be made on May 5, 2040.

d. $12,500.00 quarterly, guaranteed 1 year,

beginning at age 26 (on August 5, 2043). The last

payment will be made on May 5, 2044.

e. $6,250.00 quarterly, guaranteed 3 years,

beginning at age 27 (on August 5, 2044). The last

payment will be made on May 5, 2047.

f. $1,803.64 per month for the life of Lillie Rodriquez,

guaranteed 25 years, beginning at age 22 (on

August 5, 2039). The last guaranteed payment will

be made on July 5, 2064.

g. $200,000.00 guaranteed lump sum payable at age

30 (on August 5, 2047).

(3) The obligation to make periodic payments described

above may be assigned to USAA Annuity Services

Corporation and funded by an annuity contract issued by

11

USAA Life Insurance Company, rated A++XV by A.M.

Best Company, and AA+ by Standard and Poor's.

2. In consideration of the above-referenced payments, Progressive County
   Mutual Insurance Company, Tyler Swafford, as the Personal Representative
   of the Estate of Ricky Swafford, The Estate of Ricky Swafford, Gulf Interstate
   Field Services, Inc., Gulf International Corporation, Liberty Mutual Insurance
   Company and Fireman's Fund Insurance Company/Allaniz are released from
   any further claims from Iris Rodriquez, Individually and as Natural Guardian
   and Next Friend of Chevy Alan Rodriquez and Lillie Rose Rodriquez, minors,
   arising from the accident of October 25, 2017.

3. All claims against National American Insurance Company are also dismissed
   with prejudice.

4. The fees of Cord Borner, the court-appointed Guardian Ad Litem, shall be
   paid by Gulf Interstate Field Services, Inc., and Gulf International Corporation
   and their insurers.

Generally, a party may file written objections with the Clerk of the District Court
within 14 days after that party is served with a copy of a proposed findings and
recommended disposition. *See* 28 U.S.C. § 636(b)(1). However, at the February 3,
2021 hearing, the parties waived the objections period set forth in § 636(b)(1), so that
this case may be finalized expeditiously. (Doc. 75).

For the reasons set forth herein, the Court respectfully **RECOMMENDS** that the parties' *Motion for Court Approval of Minor Settlement* (the "Motion"), (Doc. 68), be **GRANTED** and the settlement be **APPROVED**.

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE